NOA SPEARS AND WIFE v. CITY OF SAN ANTONIO.

No. 3278.    Decided June 23, 1920.

(223 S. W., 166.)

1.—Constitutional Law—Cities—Street Improvement—Delegating Legislative Power.

The Act of May 10, 1909, Laws, 31st Leg., ch. 14, p. 402, authorizing construction by cities, etc., of permanent street improvements at cost of owners of abutting property, subject to the adoption of the powers conferred by vote of resident tax payers, was not unconstitutional as delegating legislative power to such voters. State v. Swisher, 17 Texas, 441, distinguished. San Antonio v. Jones, 28 Texas, 33, and Werner v. City of Galveston, 72 Texas, 27, followed. (Pp. 621-624).

2.—Same.

It is within the authority of the Legislative to confer powers on appropriate governmental agencies, to be exercised in the promotion of the general welfare, and it is no valid objection to the grant of powers by the State to municipalities for the act of the Legislature granting them to require each municipality, before availing itself of the granted powers to indicate its acceptance of same by the votes of its electors, Riley v. Town of Trenton, 184 S. W., 345, approved. (P. 622).

3.—Street Improvement—Exempt Property—Lien—Personal Liability of Owner.

The Act of May 10, 1909, secs. 6, 8, now articles 1011, 1013, Rev. Stats., while denying the right to fix a lien for the cost of street improvement upon the abutting homestead, authorizes the fixing of personal liability therefor upon the homestead owner. (P. 624).

4.—Same—Property of Married Woman.

The word "owners" in articles 1011, 1013, Rev. Stats. (Act of May 10, 1909) includes married women as well as other owners and authorizes the fixing on them, as on other owners, of personal obligation for cost of street improvement. (Pp. 624, 625).

5.—Statutory Construction.

Exceptions will not be engrafted on statutes by implication or merely because good reasons might be found for adding them.   (P. 625).

6.—Cases Discussed.

Storrie v. Cortes, 90 Texas, 295, distinguished.   Eubank v. City of Ft. Worth, 173 S. W., 1003, disapproved.   Rulings in this case on appeal (City of San Antonio v. Spears, 206 S. W., 703) approved.   (Pp. 625, 626).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

The City of San Antonio sued Spears and wife and appealed from a judgment in favor of defendant.  The judgment was reversed and rendered against the wife, 206 S. W., 703, and appellees procured writ of error.

*Lewright & Douglas,* for plaintiffs in error. —It has been definitely and specifically decided by the courts of Texas that a married woman may not be held personally liable for street improvement assessments, chargeable against property owned by her in her own separate right, and the rule of *stare decisis* will apply to this question, and the trial court did not err in so holding.  Eubank v. City of Ft. Werth, 173 S. W., 1003; City of Dallas v. Atkins, 197 S. W., 593.

The following provision of article 1016: "The benefits of the provisions of this chapter shall apply to any city, and the terms thereof extend to the same, when the governing body thereof shall submit the question of the adoption or rejection hereof to a vote" etc., makes the whole act (the statute—the law—the power—the operation of the legislation in San Antonio or elsewhere) absolutely dependent on whether the people of the given locality vote to embrace it (to put it into effect—to adopt it—to make it law) in the laws applicable to the particular neighborhood.  By so doing the Legislature is delegating to the people the performance of a trust which the makers of the Constitution confided to them alone, since the discretion to say whether a statute shall be effective or not, and when, as essentially involves the power of legislation as does the drafting of the statute.  The exercise of such power is in complete contradistinction from the right sometimes given by the Legislature in statutes to avail of certain optional privileges, in which instances the people or the local authorities merely determine that it has become necessary or advisable to make use of a specific instrumentality or right which the Legislature has provided for local administrative purposes under a statute already in full force and effect.  The difference is between the choice of making law (or of making a statute operative, which is the same thing) and the choice of doing something under a law already made (that is, of operating under a statute).  This distinction is recognized by the Supreme

Court in the "pool hall" and Swisher cases, on the one hand, and those several decisions which hold that a locality may be permitted to decide for itself whether it will authorize *the use* of an *existing* right on the other. State v. Swisher, 17 Texas, 441; Ex parte Mitchell, 177 S. W., 953.

*R. J. McMillian, L. M. Dabney, Taliaferro, Cunningham & Birkhead, Augustus McCloskey,* and *L. H. Flewellen,* for defendants in error.—When an Act complete in itself, particularly one pertaining to regulation of local municipal affairs, comes from the hands of the Legislature it is not unconstitutional, as a delegation of legislative authority, if it provides that it shall take effect in a particular locality upon the happening of a contingency, such as acceptance by vote, or by the order of some municipal body, or upon the happening of some other contingency. San Antonio v. Jones, 28 Texas, 19; Dobbins v. San Antonio, 2 Posey, 709; Johnson v. Martin, 75 Texas, 39; Woerner v. Galveston, 72 Texas, 23; Graham v. Greenville, 67 Texas, 62; Stanfield v. State, 83 Texas, 317.

The following cases from other States support the Texas authorities, and in addition to those therein stated, if the court has any curiosity on the subject we refer them to the following: Minnesota: Rel Childs v. Copeland, 34 L. R. A., 777, 69 N. W., 27; State v. District Court of Ramsey County, 75 N. W., 224; State v. District Court of Hennepin County, 22 N. W., 625. Florida: McConihe v. State, 17 Fla., 238; Heeley v. Starke, 18 Fla., 255; Ex parte Wills, 21 Fla., 280. Indiana: Maize v. State, 4 Ind., 342; Lafayette v. Geiger, 34 Ind., 226. Iowa: Gabrick v. State, 5 Iowa, 492; Dalby v. Wolf, 14 Iowa, 228. New Jersey: Hall v. District Court, Glouchester County, 1 L. R. A., 86, 50 N. J. Law, 585; Re Cleveland, 7 L. R. A., 431, 52 N. J. Law, 188; Patterson v. Society, 24 N. J. Law, 385; State v. Morris County, 36 N. J. Law, 72; State v. Hoaglan, 51 N. J. Law, 62. Massachusetts: In Re Suffrage for Woman, 23 L. R. A., 113. See also on the general subject of delegation of legislative authority and special laws, Staples v. Llano County, 28 S. W., 569; 26 American & English Encyclopedia of Law, p. 567; Vol. 6, p. 1022.

The Act of 1909, chapter 14, does not exempt married women or their property from the operation of the law, and when all the requirements of the law have been met, as they have in this case, a married woman has no more rights than any other person has. Storrie v. Cortes, 90 Texas, 283; Lorenberg v. City of Galveston, 42 S. W., 1024; City of Paris v. Bray, 142 S. W., 927; Higgins v. Bordages, 88 Texas, 458; City of Austin v. Nalle, 102 Texas, 536; City of Austin v. Nalle, 101 Texas, 48; Paris v. Brenneman, 126 S. W., 59; Taylor v. Boyd, 63 Texas, 533; Allen v. Galveston, 51 Texas, 302; Roundtree v. Galveston, 42 Texas, 626; Word v. Galveston, 76 Texas, 133; Harris Co. v. Boyd, 70 Texas, 241;

Hutcheson v. Storrie, 92 Texas, 685; Jones v. Houston, 188 S. W., 688; Gallaher v. Whitley, 190 S. W., 757; Vernon-Sayles Statutes, title 22, chap. 11,—particularly articles 1009, 1011, 1012, 1013. See also in connection with article 1013 above, Vernon-Sayles Statutes. title 81, chap. 3, art. 5502 (R. S. 3268) sec. 2; Atlanta v. 1st Pres. Church, 86 Ga., 730, 12 L. R. A., 852, and notes; Zable v. Orphans Home, 92 Ky, 89 13 L. R. A., 668; Sheehan v. Good Samaritan Hospital, 11 Am. Rep., 412; Olive Cemetery v. Phila., 39 Am. Rep., 732; 91 N. W., 484; 104 Mass., 470; 28 N. E., 1076; 51 Am. Rep., 809; 36 L. R. A., 263; Section 2, Article 8, Constitution of Texas; Vernon Sayles Statutes, art. 7507.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Defendant in error, City of San Antonio, sued plaintiffs in error, Noa Spears and Mrs. May H. Spears, husband and wife, to recover, the sum due on a certificate of assessment for part of the cost of paving a certain street in San Antonio. Mrs. Spears owned, as her separate estate, a lot and part of another lot on the street, which constituted the residence homestead of herself and husband. The city also sought to foreclose a lien for the amount sued for against said homestead.

Judgment was rendered in the District Court that the City take nothing by its suit. On appeal, the judgment was reversed, and the City obtained a personal judgment against Mrs. May H. Spears, as the owner of the property benefited by the street paving, for the amount of the certificate, without foreclosure. 206 S. W., 703.

The case presents two questions. The first is whether the Act approved May 10, 1909, to authorize towns, cities and villages in Texas to construct permanent street improvements, and to assess part of the cost against abutting property and the owners thereof, and to provide for the enforcement and collection of such assessments, is unconstitutional, as involving a delegation to municipalities of legislative power. The election provided for in the Act was held in San Antonio on the very day the law became operative putting the home rule amendment to the Constitution into effect, and therefore there could be no compliance at the election with the terms of said law. Hence, the question stated must be determined without reference to the power conferred on cities of more than five thousand inhabitants, by said amendment, with regard to the adoption and amendment of charters. The second question is whether under section 7, (Article 1012, Rev. Stats.), a married woman is personally liable for any part of the cost of street improvements, assessed against her as the owner of abutting property.

Plaintiffs in error urge that the entire act is void, under the cases of State v. Swisher, 17 Texas, 441, and Ex Parte Mitchell, 177 S. W., 953, claiming that whether the act ever became law depended on the results of municipal elections.

If it were true that the act under consideration did not become effective as a law without the sanction of a majority of the voters at referendum elections, it would be unconstitutional, under the doctrine announced in the cases cited in behalf of plaintiffs in error. In that event, the law would be "made at last by the popular vote of the people," in subversion of the principle of lawmaking under our Constitution, "that laws are made by the people, not directly, but by and through their chosen representatives," as Judge Lips- comb pointed out in Swisher's case.

It is an important and ordinary function of the Legislature, how- ever, to confer powers, on appropriate governmental agencies, to be exercised in the promotion of the general welfare. And, it is now thoroughly settled that it furnishes no valid objection to the grant of powers by the State to municipalities for the act of the Legis- lature granting the powers to require each municipality, before availing itself of the granted powers, to indicate its acceptance of same by the votes of the electors of the municipality.

The case of San Antonio v. Jones, 28 Texas, 33, recognized and declared the validity of an act of the Legislature conferring a power on the city of San Antonio to subscribe to the capital stock of a railroad company, notwithstanding a provision that the power should not be exercised until two-thirds of the electors of the city voted for the subscription. After announcing that the case of State v. Swisher, had been correctly decided, the court, per Chief Justice Moore, said: "But we cannot agree that it has any application to the case now before the court. It is not a legitimate construction of the act to incorporate the San Antonio and Mexican Gulf Railroad Company to say that the legislature intended, or did thereby confer, upon the citizens of the city of San Antonio any legislative power whatever. The Legislature may grant authority as well as give commands, and acts done under its authority are as valid as if done in obedience to its commands. Nor is a statute, whose complete execution and application to the subject-matter is, by its provisions, made to depend on the assent of some other body, a delegation of legislative power. The discretion goes to the exercise of the power conferrd by the law, but not to make the law itself. The law, in such cases, may depend for its practical efficiency on the act of some other body or individual; still, it is not derived from such act, but from the legislative authority. Legislation of this character is of familiar use, and occurs whenever rights or privileges are conferred upon individuals or bodies, which may be exercised or not in their discretion. And if it may be left to the judgment of individuals or private corporations whether they will avail them- selves of privileges conferred by the Legislature, there is certainly no valid reason why the same may not be done with citizens of a town or district, who, as a class, are to be affected by the proposed act."

In Werner v. City of Galveston, 72 Texas, 27, 7 S. W., 726, 12 S. W., 159, it was claimed that the law authorizing cities and towns to take control of and manage their public schools was unconstitutional because it involved an abdication by the legislature of its legislative authority to the voters of the cities and towns. The claim was rejected in the following emphatic language of the Court by Judge Gaines: "It is a well settled principle that the Legislature cannot delegate its authority to make laws by submitting the question of their enactment to a popular vote; and in The State v. Swisher, 17 Texas, 441, this court held an act of the Legislature which authorized the counties of the State to determine by popular vote whether liquor should be sold in their respective limits to be unconstitutional. But is does not follow from this that the Legislature has no authority to confer a power upon a municipal corporation and to authorize its acceptance or rejection by the municipality according to the will of the voters as expressed at the ballot box. Mr. Dillon says: 'It is well established that a provision in a municipal charter that it shall not take effect unless assented to or accepted by a majority of the inhabitants is in no just sense a delegation of legislative power, but merely a question as to the acceptance or rejection of a charter.' 1 Dillon on Mun. Cor., sec. 44, and cases cited. See especially Alcorn v. Hamer, 38 Miss., 652. That such legislation is not unconstitutional is expressly decided by this court in the case of Graham v. City of Greenville, 67 Texas, 62. The act under consideration merely leaves each town or city in the State to determine by a vote whether it will exercise the power of controlling its public schools as a separate school district or not, and is in our opinion clearly constitutional."

This case is ruled by San Antonio v. Jones, and Werner v. City of Galveston, *supra*. The act is defined by its caption as one granting specified authority to incorporated towns, cities and villages. The reason for the legislation is stated in the emergency clause to be the fact that many cities have neither general funds for street improvements nor charter powers under which the cost thereof can be collected from abutting property owners. While section 11 provides for an election upon the question of the adoption of the act, yet, when the object of the act and all of its terms, especially those of section 1, are considered, we think the provision for the election means no more than that it shall be left to the resident property tax-payers, who are qualified voters in each municipality, to determine whether the municipality shall exercise the powers conferred relative to street improvements.

The act became law ninety days after the adjournment of the Legislature regardless of whether any municipality accepted its benefits. It was beyond the power of the electors to add anything to, or to take anything from, the law. The act would have remained in

force as law, though every municipality had declined to exercise the conferred authority.

We approve the following declaration of the Texarkana Court of Civil Appeals, in upholding the act here assailed, viz: "If the Legislature, in the first instance, may permit the inhabitants of a given territory to determine for themselves whether they shall become incorporated and be subject to the duties and liabilities incident to incorporation as prescribed by the laws relating thereto, there seems to be no good reason why the Legislature may not also provide a similar means for enlarging or extending the corporate powers." Riley v. Town of Trenton, 184 S. W., 345. For, the true question presented, instead of being one of delegation of legislative authority, is merely one of acceptance or rejection by a municipality of an additional charter power.

Was Mrs. Spears exempt from personal liability for any part of the cost of improving the street whereon her homestead was situated, because the title thereto was in her separate estate and she was a married woman?

The Legislature expressly conferred the power on the governing body of any city, in section 6 of the Act, now article 1011, Rev. Stats., "to assess the whole cost of constructing sidewalks, or curbs, and not to exceed three-fourths of the cost of any other improvement against *the owners* of property abutting on such improvement, and against their *abutting property* benefited thereby," it being provided by section 8, now article 1013, that "no assessment shall be made against any owner of abutting property or his property in any event in excess of the actual benefit to such owner in the enhanced value of his property, by means of such improvements" as ascertained at a proper hearing of which due notice must be given the owner.

With regard to exempt property, the Act denies to any city the power to fix a lien by assessment against same but declares that "the owner of such exempt property shall nevertheless be personally liable for the cost of improvements constructed in front of his property, which may be assessed against him."

It is evident that the Legislature has authorized the imposition of personal liability against Mrs. Spears for part of the cost of improving the street in front of the exempt property, belonging to her separate estate, unless it be correct, as is asserted in her behalf, that a married woman is not meant to be included within the term "owners" or "owner" as used in the act.

We do not think these words can be construed so as to exclude married women from the obligations imposed by the act on benefited property owners without violating several cardinal canons in the construction of laws.

We cannot give the ordinary signification to "owners" or "owner" and exclude a person in whom title is vested merely because

such person has a certain *status* through marriage. Art. 5502, subdivision 1, Vernon's Sayles' Tex. Civ. Stat.

To exclude married women from the operation of the Act would be to seriously impair if not defeat its aim, which was manifestly to impose the burden of the cost of needed public improvements, as far as constitutionally possible, in a uniform way, on the special beneficiaries of the improvements. Courts ought not to interpret laws so as to nullify or impair them when their language reasonably admits of a different meaning. Robinson v. Varnell, 16 Texas, 389.

It is surely the settled law that exceptions will not be engrafted on statutes by implication or merely because good reasons might be found for adding them. Tyson v. Britton, 6 Texas, 223; Wallace v. Stephens, 74 Texas, 560, 12 S. W., 283. Thus, it is said in Laughter v. Seela, 59 Texas, 186: "Femes covert, infants and lunatics, the estates of the living and the dead are alike comprehended within the broad and general terms used in the statute. In such cases it is not for the courts to engraft exceptions upon a statute, when the lawmaking power has not seen fit to do so." Here the statute empowers the cities to tax the cost of street improvements against adjacent property, except homestead property, and against all owners, expressly providing that it shall make no difference, in fixing the personal liability of the owner, whether the property is homestead.

Viewing the act as a whole, from caption to emergency clause, the legislative intent is plain to treat all owners alike and to treat all property alike, save homestead, and that is made an exception because of constitutional limitation. "Strictly speaking, there is but one rule of construction, and that is, that the legislative intent must govern." Mills County v. Lampasas County, 90 Texas, 606, 40 S. W., 403.

We do not regard the decision in Storrie v. Cortes, 90 Texas, 295, 35 L. R. A., 606, 38 S. W., 154, as holding that a charter provision authorizing the imposition of a personal charge against the owner of real estate for a street improvement would not support the enforcement of such a charge against a married woman. It was originally determined in that case that such a personal charge would be valid "against the owners of the property," though it was homestead. On rehearing it was announced that the personal charge would be confined to a husband, who was "*the owner* of the property at the time the assessment was made." The opinion added that the owner's wife, "being a married woman is not liable personally for such assessment." The decision was, of course, correct in denying a personal judgment against the wife, as to whom no liability was sought to be enforced save by the terms of the statute, when she was without the operation of the statute, by reason of not being an owner of the property. In our opinion, the language used by Judge Brown meant no more than this.

The Fort Worth Court of Civil Appeals held that a married woman was not personally liable on an assessment for an improvement in front of her separate property, where the assessment was authorized to be made against the owner by a provision of the Fort Worth charter. Eubank v. City of Fort Worth, 173 S. W., 1003.

The holding was based in part on the conclusion, with which we have already stated we do not agree, that Storrie v. Cortes should be construed as deciding that a married woman's *status* as such precluded the imposition upon her of a personal liability as the owner of property benefited by a street improvement under a charter provision for imposing such liability on the owner of the property.

The holding was also based on the erroneous view that the charter provision, if construed to authorize a personal charge against married women owners, would by implication repeal the article then in force regulating contracts by married women, being article 4624 of the Revised Statutes of 1911, and that to avoid an irreconcilable conflict between the charter provision and article 4624 and the consequent repeal of the latter by implication, the word "owner" in the charter provision would be so interpreted as not to include a married woman.

In our judgment there was no conflict between article 4624 and the provision of the Fort Worth charter. The latter imposed a charge regardless of any contractual power or contractual obligation on the part of the owner whose property was enhanced by a necessary public improvement. In order to be enforceable, the charge had to be validly imposed regardless of the assent or consent of the owner. Article 4624, on the other hand, related solely to the power of the married women to incur contractual obligations. The charter provision and the statute related to diverse subjects, and the charter provision had no possible effect as enlarging or restricting or in any way affecting the power of married women to bind themselves by contract.

We deem it unnecessary to add more to the full and clear discussion by Judge Moursund in this case of the whole question of the married woman's personal liability for benefits to her separate property through public improvements constructed under this act.

The judgment of the Court of Civil Appeals should be affirmed and it is so ordered.

*Affirmed.*